IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

In Re:                                )
                                      )
ROBERT AND MARY                       )
KOERKENMEIER,                         )    Case No. 04-21089
                                      )
        Debtors.                      )

## **MEMORANDUM OPINION**

The matter before the Court in this case is the Final Application by Virgil D. Rodgers II, Attorney At Law, for Debtors for Allowance of Compensation for Services Rendered and Reimbursement of Actual and Necessary Expenses for the Period of April 2004 Through June 2005 ("Application") and the objection of the United States Trustee to the Application. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(B). In the Application, Debtors' counsel ("Applicant" or "Mr. Rodgers") seeks an award of compensation in the amount of $14,272.50. The United States Trustee objects, contending that the Court lacks jurisdiction over the Application because the Chapter 11 case had been closed and Applicant has not filed a motion to reopen, that no compensation should be awarded for services rendered prior to the date on which Mr. Rodgers filed an application to be retained as counsel for the debtors and that the fees sought are unreasonable and excessive. This Memorandum Opinion contains my Findings of Fact and Conclusions of Law as required by Rule 52 of the Federal Rules of Civil Procedure made applicable to this proceeding by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For all the reasons set forth below, the Court sustains the objection in part and overrules it in part and approves the Application in part and disapproves it in part.

## I. BACKGROUND

The debtors filed this Chapter 11 proceeding on May 3, 2004. A plan of reorganization was filed on August 31, 2004 and an accompanying disclosure statement filed the day after. The Court issued an order preliminarily approving the disclosure statement and setting a combined hearing on the final approval of the disclosure statement and confirmation of the plan of reorganization for October 21, 2004. As a result of that hearing, certain objections to the disclosure statement were sustained and debtors were ordered to file an amended disclosure statement and amended plan of reorganization with the confirmation hearing to occur on November 18, 2004. The Court was unable to convene a confirmation hearing on that date as scheduled because Mr. Rodgers suffered an apparent heart attack upon entering the courthouse. The Court continued the confirmation hearing to its December 15, 2004 docket. Numerous objections to confirmation of the plan were filed, primarily by the debtors' principal secured creditor. Evidence was taken and the Court denied confirmation of the proposed Chapter 11 plan on the grounds that the debtors had not demonstrated that it was feasible.

On February 3, 2005, the law firm of Spencer, Fane, Britt & Browne filed an application for authorization to be employed as counsel for the debtors. On that same date, the firm of Crews & Rodgers finally filed an application for authorization to act as debtors' counsel as well. The Court entered orders sustaining both applications on February 11, 2005. Shortly thereafter, on February 14, 2005, debtors filed an amended plan. A second amended plan was filed on March 21, 2005. A hearing was held on the second amended plan on March 24, 2005 at which time the parties announced an agreement had been reached, a consensual amended plan would be filed and that a confirmation order could be entered. Some additional modifications were made

to the plan and a motion for confirmation was filed on April 8, 2005. The Court entered its order confirming the plan as amended on April 12, 2005.

On June 3, 2005, Spencer Fane filed an application for compensation and reimbursement of expenses in the amount of $11,650.10. Although no formal objection was filed to that application, the United States Trustee apparently raised certain issues about fees charged for services which included travel time and an adjustment to the application was agreed to. Based upon that agreement, an order was tendered to the Court and entered on June 21, 2005 allowing the application in the amount of $10,350.00.

On June 27, 2005, Debtors filed a motion to close the Chapter 11 case. The United States Trustee objected, noting that quarterly fees to the United States Trustee remained unpaid and that the case should not be closed until they had been satisfied. A hearing on the motion to close was called and continued several times. The opposition was ultimately withdrawn and an order was entered granting the motion to close on September 19, 2005. On September 30, 2005 a final order was entered closing the Chapter 11 case.

On February 22, 2006, approximately five months after the Court's order closing the case, Mr. Rodgers filed the Application. The United States Trustee has objected to the Application on three grounds: (1) the Court lacks jurisdiction over the Application because the Chapter 11 case has been closed and the Applicant has failed to file a motion to reopen; (2) the Applicant should not be compensated for services rendered prior to the date on which he filed his application to be retained as counsel; and (3) that the fees sought are unreasonable and excessive in light of the nature and complexity of the proceeding. In support of the last argument, the United States Trustee contends that this was an uncomplicated Chapter 11 proceeding, the case

had languished under the supervision of Applicant and that confirmation was only achieved after entry of appearance by co-counsel, who appeared to have assumed primary responsibility for obtaining confirmation of the plan.

## II.  DISCUSSION

### A.  Jurisdiction

The United States Trustee cites *Bradley v. Barnes (In re Bradley)*, 989 F.2d 802 (5th Cir. 1993) and *In re Winebrenner*, 170 B.R. 878, 881 (Bankr. E.D. Va. 1994) for the proposition that a bankruptcy court's jurisdiction over a case ceases upon entry of an order closing the case and contends that absent an order reopening the case, the Court lacks subject matter jurisdiction over the Application. She concedes that a court may retain jurisdiction over a fee application after case closing if such jurisdiction is preserved in an order entered prior to closure, citing *In the Matter of Talandis*, 95 B.R. 108 (Bankr. S.D. Iowa 1989), but notes that neither the confirmation order nor the order closing the case contains such a reservation.

These cases either do not stand for the proposition for which they are cited or are distinguishable.  The courts in both the *Bradley* and *Winebrenner* cases, while declaring as a general proposition that the bankruptcy court's jurisdiction normally ceases when the case is closed, recognize an exception for matters "arising under" Title 11.  *Bradley*, 989 F.2d at 804; *Winebrenner*, 170 B.R. at 881.  Applying that exception, the court in *Bradley* held that it did have jurisdiction over a debtor's claim for violation of § 525 of the Bankruptcy Code notwithstanding the failure to reopen the case.  In this case, the Application arises under § 330 of the Bankruptcy Code.  Accordingly, under that formulation, the Court would have jurisdiction over the Application notwithstanding the closing of the case.  The Court finds the *Talandis* case

distinguishable for the reason that it had been dismissed. This case was administratively closed, but not dismissed.

In *Koehler v. Grant*, 213 B.R. 567 (B.A.P. 8th Cir. 1997), the Eighth Circuit Bankruptcy Appellate Panel held that a bankruptcy court may consider a matter within its jurisdiction notwithstanding the fact that the case was closed. *Koehler*, 213 B.R. at 569-570. Admittedly, in that case, the proceedings which occurred subsequent to case closure were on enforcement of an order previously entered by the court. However, the court observes that jurisdiction is conferred on the bankruptcy courts by statute, deriving from 28 U.S.C. § 1334, and does not end once a plan is confirmed or the case is closed. *Koehler*, 213 B.R. at 569. That pronouncement squares with what appears to be the prevailing rule that closure relates merely to the administrative status of a case and does not deprive the bankruptcy court of jurisdiction to determine matters relevant to the case. *In re Sterling Optical Corp.*, 302 B.R. 792, 802 (Bankr. S.D.N.Y. 2003); *In re Aiello*, 231 B.R. 693, 706 (Bankr. N.D. Ill. 1999); *In re Taylor*, 216 B.R. 515, 521 (Bankr. E.D. Pa. 1998).

While the Court therefore believes that it does have jurisdiction, reopening of the case may still be appropriate as an administrative matter before the Court considers substantial proceedings in the case. *In re Rex*, 217 B.R. 57, 61 (Bankr. E.D. Pa. 1998); *Koehler*, 216 B.R. at 522. As the United States Trustee points out, the Application is not a merely ministerial matter. The Court conducted a hearing on the Application and the objection and has otherwise devoted substantial judicial resources to it. It is hardly unfair or unreasonable under the circumstances to require Applicant to reopen the case, as he had more than enough opportunity to seek compensation during the approximate three-month period the motion to close was pending.

Accordingly, the Court concludes that while the failure to reopen the case does not deprive it of jurisdiction, as an administrative matter, a motion to reopen should be filed as a condition to the Court's entry of an order on the Application. Pursuant to 28 U.S.C. § 1930(a), that motion must be accompanied by the appropriate reopening fee.

### B.  Nunc Pro Tunc Retention

As noted above, Mr. Rodgers did not file an application to be retained as counsel for the debtors until February 3, 2005, coincident with the entry of appearance by co-counsel. At that time, the case had been on file for nine months. In the Application, Mr. Rodgers seeks compensation for services rendered from the date of filing forward. The United States Trustee objects, contending that the Court may not compensate Mr. Rodgers for services rendered prior to the effective date of the order sustaining his application to be retained as counsel.

Counsel seeking to represent the debtor-in-possession must apply for retention pursuant to § 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure. *In re Kroeger Properties and Development, Inc.*, 57 B.R. 821, 822 (B.A.P. 9th Cir. 1986). Retention pursuant to this process is a prerequisite to compensation. *In re Jefsaba, Inc.*, 172 B.R. 786, 804 (Bankr. E.D. Pa. 1994); *Kroeger,* 57 B.R. at 822. This is not a mere formal requirement, but permits the bankruptcy courts to ensure that proposed counsel for debtors are qualified and lack conflicts which would hinder their representation.

In *J. L. Lavender v. Wood Law Firm (In re Lavender)*, 785 F.2d 247 (8th Cir. 1986), the Eighth Circuit affirmed the bankruptcy court's denial of a law firm's application for retroactive authorization of its receipt of compensation for services rendered to the debtors-in-possession. The court observed that an attorney seeking compensation from the estate must obtain approval

on notice to creditors prior to receiving such compensation. *Lavender*, 785 F.2d at 248. The court held that absent such prior approval, subsequent applications should be denied and fees received should be returned to the estate. *Lavender*, 785 F.2d at 248. Although the decision arose in the context of the law firm's receipt of compensation without prior application and notice, it has been applied as well to requests for compensation for services rendered during the period prior to formal retention. *See, e.g., In re Interco Inc.*, 135 B.R. 363, 365 (Bankr. E.D. Mo. 1991).

The rule, however, is not absolute. The court has discretion to enter a nunc pro tunc order authorizing compensation under "limited circumstances." *Lavender*, 785 F.2d at 248 (citing *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1284-85 (5th Cir. 1983)); *see also Jefsaba*, 172 B.R. at 804 ("extraordinary cases"); *In re Emco Enterprises, Inc.*, 94 B.R. 184, 187 (Bankr. E.D. Cal. 1988) ("exceptional circumstances"). In order to justify the entry of such an award, the applicant must demonstrate both a satisfactory explanation for the failure to receive prior judicial approval and benefit to the estate from the services rendered. *Emco*, 94 B.R. at 187. Mere negligence in seeking prior court approval does not constitute a satisfactory explanation. *Emco*, 94 B.R. at 187; *Kroeger*, 57 B.R. at 822. In determining whether circumstances exist authorizing nunc pro tunc retention, the courts have considered such factors as: whether the applicant or some other person bore the responsibility for applying for approval; whether the applicant was under time pressure to begin services without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third-parties; and other relevant factors. *Interco*, 135 B.R. at 365. Limiting the entry of nunc pro tunc retention orders to such limited

circumstances is designed to encourage compliance with the requirements of § 327.  *Emco*, 94 B.R. 188; *Kroeger* at 822-23.

While the Court recognizes and endorses these general principles relating to nunc pro tunc retention, after reviewing the record in this case, it has determined that they are inapplicable.  In the application for retention filed by the Crews & Rodgers firm on February 3, 2005, counsel specifically requested that this Court enter an order authorizing their retention as counsel for the debtors nunc pro tunc, effective as of the date of the filing of the petition.  No objection was filed to that application and on February 11, 2005, the Court entered its order sustaining the application.  Since the Court's previous order granting counsel's application for retention specifically made it effective as of the date of the filing of the petition, there is no period during the case in which services were rendered prior to the effective date of an order of retention.  For that reason, the United States Trustee's objection to the Application on that basis is overruled.

### C.  Reasonableness of the Fees Requested

The burden is on the applicant to establish an entitlement to compensation.  *Chamberlain v. Kula (In re Kula)*, 213 B.R. 729, 736 (B.A.P. 8th Cir.1997).  Applicant must demonstrate that the services for which compensation is sought were necessarily provided and that the amounts requested are reasonable.  *In re Tarkio College*, 195 B.R. 424, 430 (Bankr. W.D. Mo. 1996); *In re Meyer*, 185 B.R. 571, 574 (Bankr. W.D. Mo. 1995).  Unless the circumstances indicate that application of the approach is inappropriate for some reason, the bankruptcy courts utilize the lodestar approach under which the number of hours reasonably expended in representation is multiplied by a reasonable hourly rate.  *In re Apex Oil Co.*, 960 F.2d 728, 732 (8th Cir. 1992);

*Kula*, 213 B.R. at 736; *In re Morrison*, 231 B.R. 754, 758 (Bankr. W.D. Mo. 1999).

The Court must therefore evaluate the hourly rate charged and the number of hours expended. The hourly rate charged by counsel is quite reasonable and the United States Trustee did not suggest otherwise. It is significantly lower than the hourly rate charged by co-counsel. The United States Trustee suggests that the number of hours expended by Applicant was unreasonable in part because this case was not a complex one. The Court agrees the case was not unusually complex, particularly when compared with large corporate proceedings. It does not, however, believe that the amount of fees sought is manifestly unreasonable, particularly in light of the fact that more than $10,000 in fees were incurred by (and awarded to) Applicant's co-counsel in a period of less than four months while Applicant represented debtors for more than a year.

The United States Trustee suggests as well that the case languished during the period of time that Applicant alone represented the debtors and that debtors achieved confirmation of a plan only after (and very shortly after) entry of appearance by co-counsel. The Court does not share the view that there was unreasonable delay in this proceeding. The plan of reorganization and disclosure statement were filed within 120 days of the filing of the case. Although the confirmation hearing was continued twice, one of those continuances was a result of Mr. Rodgers' health issues. The other continuance was a result of the fact that changes needed to be made in the disclosure statement which required resolicitation. This is a common occurrence in small business cases in which the Court attempts to compress the confirmation timeline by combining the hearing on approval of the disclosure statement and confirmation of the plan of reorganization. Although confirmation of the proposed plan of reorganization was

denied, the failure to demonstrate that the proposed plan was feasible was not solely or even primarily the fault of counsel. As Applicant indicates in his response, a consensual plan of reorganization was only possible when debtors finally conceded the need to sell their property, a realization they came to only after unsuccessfully attempting to confirm a plan that provided for restructure of the debt. Rapid confirmation of the plan after the entry of appearance by co-counsel was clearly attributable in part to the skill and experience of co-counsel, but also attributable in part to the length of time the debtors had already been in Chapter 11, their unsuccessful attempt to confirm a plan which did not call for sale of the real property and the need for a second opinion of experienced counsel confirming the need to make the sale of the property a centerpiece of the plan.

Having said all this, the Court also observes that the statement attached to the fee application is not a model one. In some instances, only conclusory descriptions are given of the reason for conferences with clients or other services and multiple tasks are often lumped together in one time entry. Both practices are inappropriate. The Court has reviewed each of the time entries and believes that some of the tasks performed were not necessary and that in other instances the amount of time spent was unreasonable or excessive.

For example, it apparently took Applicant almost 27 hours to formulate an acceptable set of Schedules of Assets and Liabilities and a Statement of Financial Affairs. The Court considers this excessive and disallows one-half of the $3,301.00 in fees incurred in this effort. Applicant also spent a substantial amount of time preparing monthly operating reports. Although after the initial reports, he apparently delegated that responsibility to someone who billed at a lower hourly rate (or billed his own time at a lower rate), each monthly operating report took

approximately two hours of counsel's time. Those reports should be prepared by the client (or a financial professional) with final review by counsel. The Court disallows half of the $2,198.50. incurred in this effort. Counsel spent one hour, resulting in a fee of $165, to prepare a motion to convert the case to Chapter 12. That motion was never prosecuted. It was filed at about the same time as an amended Chapter 11 plan. It appears to the Court to have been completely unnecessary and of no benefit to the estate or the debtors. Accordingly, the Court disallows the $165 in fees incurred in that process. A substantial amount of time, particularly in February and March 2005, was spent involved in meetings with the clients and co-counsel negotiating and amending the plan of reorganization. Some of that time includes travel, but because it is not itemized, the Court cannot identify the travel time. As noted, similar entries on the itemized statement attached to the fee application of co-counsel were reduced pursuant to agreement with the United States Trustee. Applicant billed $1,365.00 in time in those conferences. As a result of the failure to itemize travel time, which should be discounted, and as a result of counsel's failure to justify the need for multiple counsel to participate in those conferences, the Court disallows one-half of the time so expended. The total amount of the reductions described above is $3,597.25.[1]

For all the reasons cited above, the Court sustains in part and overrules in part the objection of the United States Trustee and approves in part and disapproves in part the Application. This Court will allow fees in the amount of $10,675.25. This Court's order allowing Applicant an administrative expense claim in that amount will, however, have no force

---

[1]Exhibit A attached to this order identifies the time entries subject to disallowance or reduction.

and effect and will, therefore not authorize payment of compensation, until such time as the

Applicant files a motion to reopen the Chapter 11 case and pays the appropriate reopening fee.

 A separate order will be entered as required by Rule 9021.

Dated:  June 13, 2006        /s/ Dennis R. Dow
                  THE HONORABLE DENNIS R. DOW
                  UNITED STATES BANKRUPTCY JUDGE

Copies to:

Virgil Rodgers
Sherri Wattenbarger

# EXHIBIT A

| Date | Timekeeper | Hours | Value |
|---|---|---|---|
| **Schedules of Assets and Liabilities and Statement of Financial Affairs** | | | |
| 4/28/04 | JFC | 8.0 | $1,200.00 |
| 4/29/04 | JFC | 8.0 | $1,200.00 |
| 4/30/04 | JT | 8.1 | $608.00 |
| 6/21/04 | VDR | 1.2 | $180.00 |
| 7/2/04 | JT | 1.5 | $113.00 |
| Subtotal | | | $3,301.00 |
| Discount | | | $1,650.50 |
| **Monthly Operating Reports** | | | |
| 6/15/04 | VDR | 2.0 | $300.00 |
| 7/15/04 | VDR | 1.6 | 240.00 |
| 8/11/04 | JT | 1.7 | 128.00 |
| 9/9/04 | VDR | 1.0 | $150.00 |
| 9/14/04 | JW | 1.9 | $143.00 |
| 10/13/04 | VDR | 1.8 | $270.00 |
| 11/12/04 | JW | 1.6 | $120.00 |
| 12/14/04 | JW | 2.0 | $150.00 |
| 1/14/05 | JW | 1.8 | $135.00 |
| 3/15/05 | JW | 2.0 | $150.00 |
| 8/15/05 | VDR | 5.5 | $412.50 |
| Subtotal | | | $2,198.50 |
| Discount | | | $1,099.25 |

| Date | Timekeeper | Hours | Value |
|---|---|---|---|
| **Motion to Convert** | | | |
| 2/2/05 | VDR | 1.1 | $165.00 |
| Subtotal | | | $165.00 |
| Discount | | | $165.00 |
| **Meetings With Clients and Co-Counsel** | | | |
| 3/14/05 | VDR | 2.2 | $330.00 |
| 3/24/05 | VDR | 2.5 | $375.00 |
| 3/24/05 | VDR | 4.4 | $660.00 |
| Subtotal | | | $1,365.00 |
| Discount | | | $682.50 |
| TOTAL | | | $7,194.50 |
| TOTAL DISCOUNT | | | $3,597.25 |